FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 02 2016

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS               PLAINTIFF

VS.      CASE NO. 16-4:16cv878-BSM

STATE OF ARKANSAS AND
BOONE COUNTY CIRCUIT CLERK          DEFENDANT

## COMPLAINT AND JURY DEMAND

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Complaint against the State of Arkansas and the Boone County Circuit Clerk for one (1) count of ADA Retaliation.

This case assigned to District Judge Miller
and to Magistrate Judge Kearney

1. Specifically, the Arkansas judiciary is using its administrative functions to prevent an appeal of a multi-million dollar case from reaching a judgment, and they are doing so out of personal hatred for me. The primary source of their hatred is my litigation history which is statutorily protected under Sec. 503 of the ADA. Meanwhile, co-Defendant the State of Arkansas, despite being equipped with an entire arsenal of enforcement powers, has purposefully done absolutely nothing to enforce the law against the Boone County Circuit Clerk.

### SECTION I: JURISDICTION AND VENUE

2. This Court has "federal question" subject-matter jurisdiction. See 28 USC § 1331.

3. This court has personal jurisdiction and proper venue because at least one of the Defendants – the State of Arkansas – is headquartered in Little Rock, and all defendants are residents of the State of Arkansas. See 28 USC § 1391(b)(1).

### SECTION II: SOVEREIGN IMMUNITY

4. Because this is always a top priority whenever any government agency is being sued in federal court, let's get this out of the way right now.

5.  There is no Eleventh Amendment immunity in this case. See 42 USC §12202: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

6.  This is not unconstitutional. See *Tennessee v. Lane*, 541 U.S. 509 (2004).

7.  In addition, there is no judicial immunity because the offenses are being done by the Clerk's Office, even if they may or may not be acting under the order of a circuit court administrative judge. See *Maness v. Dist. Court, Logan County-Northern Div.*, 495 F. 3d 943 (8th Cir. 2007). That same case law also makes a case for qualified immunity, but that has already been stripped away due to 42 USC §12202 and the case of Tennessee v. Lane, 541 U.S. 509 (2004), so there is no need to make any finding of whether the law is clearly established or whether any state-level remedies exist.

8.  Therefore, the Defendants are fully subject to suit in this case.

## SECTION III: FACTUAL ALLEGATIONS

### Sub-Section 1: Plaintiff's Statutorily Protected Activities

9.  Plaintiff – a resident of the city of Harrison, Arkansas and of Boone County, Arkansas – has Asperger Syndrome, a disability which severely hinders his ability to socialize with others, make friends, get jobs, get a girlfriend, etc.

10. Because this disability is not obvious (like blindness or paraplegia), many persons do not realize that it even IS a disability, and thus, they believe that they have no obligation under the

Americans with Disabilities Act to provide reasonable accommodations for it. This leads to many times when Plaintiff does not get the reasonable accommodations he is supposed to be legally entitled to. Thus, Plaintiff was faced, many many times, with two options: Either suck it up and let people do whatever they want to him and walk all over him, or file suit in federal court. Plaintiff quickly decided that the former was 100% out of the question.

11. Plaintiff could not afford to hire an attorney on an hourly basis, and because discrimination is an extremely complication area of law (indeed, the Defendant's mindset is an essential element), it is extremely rare for an attorney to take a case on contingency, especially when the Defendants in those cases honestly believe that they were doing nothing wrong.

12. Thus, Plaintiff had no choice but to represent himself pro se in these matters.

13. A non-exclusive list of the ADA cases where Plaintiff represented himself are ...

(a) Stebbins v. Reliable Heat & Air, LLC, Case No. 10-3305 in the U.S. District Court for the Western District of Missouri. This lawsuit is in good faith because Plaintiff was doing the best he could at his job, but the employer – by his own admission – made absolutely no attempt to accommodate Plaintiff's Asperger Synrome. This resulted in a few misunderstandings between Plaintiff and the employer's customers that could easily have been avoided if the employer had provided reasonable accommodations.

(b) Stebbins v. University of Arkansas, Case No. 10-5125 in the U.S. District Court for the Western District of Arkansas. This lawsuit was filed in good faith because Plaintiff – who was an emotional wreck at the time out of fear of possibly hurting someone – made some statements which the University of Arkansas perceived as a threat. Plaintiff tried to explain that, because of his Aspergers, sometimes things can come out wrong, but the UA did not want to listen.

(c) Stebbins v. Mid States Promotions, Case No. 10-3041 in the U.S. District Court for the Western District of Arkansas. This lawsuit was filed in good faith because Owner Jason Jones threw Plaintiff out of his wrestling school in retaliation for some allegedly disrespectful remark Plaintiff's allegedly made about one of Jones' best wrestlers, and never even attempted to provide the extremely reasonable accommodation of allowing Plaintiff to apologize.

(d) Stebbins v. Wal-Mart Stores Arkansas, LLC, Case No. 10-3086 in the U.S. District Court for the Western District of Arkansas. This lawsuit was filed in good faith because, although Plaintiff was not applying for any position that required him to interact with customers (having learned his lesson with Reliable Heat & Air), Wal-Mart's computerized employment application test nevertheless asked Plaintiff questions regarding how to be courteous with customers that involved position that Plaintiff was not even applying for. This, in Plaintiff's opinion, had the disparate impact of discriminating against people with Asperger Syndrome.

(e) Stebbins v. Full Sail University, Case No. 10-3072 in the U.S. District Court for the Western District of Arkansas. This lawsuit was filed in good faith because Plaintiff's attempts to communicate with the school's enrollment staff fell through the cracks because of Plaintiff's Aspergers, and the school refused to provide any accommodation whatsoever for Plaintiff's lack of social skills.

(f) Stebbins v. Legal Aid of Arkansas, Case No. 11-3057 in the U.S. District Court for the Western District of Arkansas. This lawsuit was filed in good faith because they refused to represent Plaintiff in "any matter" because Plaintiff had apparently said something they did not like, and much like Jason Jones before them, they refused to take into consideration Plaintiff's Asperger Syndrome by providing the VERY reasonable accommodation of

allowing Plaintiff to apologize for whatever it was that upset them.

(g)  Stebbins v. Harp & Associates, LLC, Case No. 11-3078 in the U.S. District Court for the Western District of Arkansas. This lawsuit was filed in good faith because the Defendants evicted Plaintiff because of all the aforementioned lawsuits previously listed in this Exhibit. Plaintiff sued Harp & Associates in that case for much the same reason he is suing the State of Arkansas in this one.

### Sub-Section 2: The Adverse Actions

14. On April 10, 2012, I filed a pro se lawsuit for, among other things, malicious prosecution, abuse of process, and conversion. In that case, I sought $11,000,000 in damages. That lawsuit was given Case No. 2012-85-4.

15. Russel Rogers was appointed as a special judge for that case, and on January 23, 2015, he issued an order stating, among other things, that the three aforemen-tioned claims were being sua sponte dismissed, without explanation and with no motion to strike those causes of action pending before the court.

16. I filed an appeal with the Arkansas Court of Appeals. That appeal was given Case No. CV-16-16. However, when I was required to lodge the record, the Boone County Circuit Clerk removed the January 23, 2015 order. I was forced to file my Addendum using my own copy of the order, even though it did not appear in the record.

17. On September 7, 2016, the Arkansas Court of Appeals issued an order commanding the Boone County Circuit Clerk to correct this deficiency. The supplemental record was supposed to be due on October 7, 2016. However, the supplemental record never came. No motion for extension of time was ever filed by the Circuit Clerk's office. There is no indication, anywhere on the record, that they ever even attempted to explain why this delay was happening. The

Circuit Court's actions are nothing short of complete utter defiance of a direct order.

18. This has the effective result of putting my appeal on the shelf indefinitely. The case cannot reach a judgment unless the supplemental record is filed.

19. Despite this, the State of Arkansas has done absolutely diddly to enforce the order against the Circuit Clerk. They have not fined Rhonda Watkins (the current leader of the Boone County Circuit Clerk's Office); they have not held her in contempt; NOTHING! All they have done is make a few phone calls, but even when they make those calls, Watkins offers no explanation as to what is taking so long, other than ... she just hasn't gotten around to it yet.

20. I called the AR Court of Appeals Clerks Office and asked if there was anything I could do to force the Circuit Clerk's Office to produce the supplemental record. They told me that there is nothing I can do on my end. So moving for a writ of mandamus or other sort of enforcement is out of the question.

### Sub-Section 3: Causal Connection

21. The Circuit Court case mentioned in ¶¶ 14-15 of this Complaint is a case where the special judge openly admitted that he hates, and was ruling against me, regardless of the facts or law, just for that reason alone.

22. Instances where he confessed to this include, but are not limited to, the following:

    (a)    In an order dated June 3, 2015:

> "He [meaning me] uses his medical condition, if such even exists, as a weapon ...
> I consider him [me] to be not just a nuisance but, far more importantly, a danger
> to himself and to others. Plaintiff's motions are accordingly denied."

    (b)    In an order dated July 6, 2015, after it was revealed that the defense attorney James E. Goldie had used *ex parte* communications to rig the case in his favor, he stated ...

> "As to the ... demands ... that something be done to punish Mr. Goldie, I will not
> do so for the following reasons

> ...
> 2. The Plaintiff is suffering from [some disability he can't even name]. He is most likely homicidal ... as well as paranoid and delusional."

23.  Since the government of Arkansas has come on record to state that their actions in Case No. 2012-85-4 of the Boone County Circuit Court are motivated almost exclusively by personal animosity due to my litigation history, we can reasonably assume that these actions are similarly motivated. After all, without sovereign immunity, the government is held to the same standards of "respondiat superior" as any other private entity; therefore, the acts and motivations of the employee are the acts and motivations of the employer; the two are literally one in the same.

24.  Meanwhile, nearly every officer of the State of Arkansas who I have ever come into contact with, from 2010 to the present, not just Russel Rogers, has made no secret that they disdain me because of my litigation history. I have been constantly harassed, bullied, and prosecuted by state officers such as prosecuting attorneys and police, just because they see me as a nuisance. Here are just a few examples of how I have been abused by Boone County and Arkansas State officials for no other reason than my litigation history:

(a)  In 2011, Goldie, in a different case than the one specified in ¶¶ 14-15 of this Complaint, sent me a letter in the mail (I still have a copy of it scanned to my computer) where he threatened to conspire with local government and law enforcement to deny me access to the courts if I did not cease exercising my constitutional right to court access.

(b)  Prosecuting Attorney Wes Bradford prosecuted me for a felony, where the only evidence was the uncorroborated word of the alleged victim. All throughout the case, Bradford made it perfectly clear that he felt that my litigation history was alone sufficient evidence to have me *presumed* guilty of the underlying felony charge ... almost as if he was using my litigation history as a means of shifting the burden of proof in the felony case onto

me, in a manner that flies in the face of Rule of Evidence 404.

(c) Bradford even, at one point, made my signing away of my constitutional right to court access *quid pro quo* conditional on having the felony charges dismissed.

(d) Former Boone County Jailor, Jason Jones, openly admitted, during testimony he provided in an April 2, 2015 jury trial, that he felt completely traumatized by the fact that I had sued him and his small business in Case No. 10-3041 in the Western District of Arkansas. He then went on to state that his acts of bullying were justified because I "deserved" it, since the act of suing him was an afront to his very humanity.

(e) In 2015, I was being harassed by my neighbor, Kimberly Vitt. She would jump out of her apartment and cuss me out every time I walked down the sidewalk. I filed a complaint with her, and a Harrison City Police Corporeal by the name of Godfrey (one of the few government officials who, thankfully, has NOT bullied and harassed me to no end) cited her with Harassment, Class A Misdemeanor, under Arkansas Statute A.C.A. § 5-71-208. However, city misdemeanor prosecutor Van Younes agreed to dismiss the charges with mere probation. By his own admission, this decision was not made because he felt the evidence was iffy or because he believed Vitt had reformed. Rather, by his own admission, it was because he didn't like the victim (me) because of my litigation history, so he was willing to let me be harassed.

(f) The Arkansas Rehabilitation Services denied me any funding for any vocational or college efforts, in part because, by their own admission, "[a] search of public records revealed multiple lawsuits filed by Mr. Stebbins." See Case No. 4:16CV00545-JM, which is currently pending in this very court.

25. Before, the government's hatred of me for my litigation history was stated within the very

case where they were discriminating against me. But even if that is not enough, the aforemenioned incidents (with more to come) can provide plenty of circumstantial evidence of their true motives under Federal Rule of Evidence 404(b). Even if a majority of actors in the aforementioned incidents (as well as the dozens of incidents besides them) might have enjoyed qualified or absolute immunity for their actions, they are still relevant and admissible as evidence in this case.

26.     More importantly, it also established the retaliatory motive for the State of Arkansas not taking any enforcement action.

27.     Even if the Circuit Clerk had a pretextual excuse for not complying with the order in a timely manner, there is virtually no excuse – pretextual or otherwise – for why they never made any effort to explain themselves prior to the October 7, 2016 deadline, when she first had the chance and could have avoided any outward appearance of impropriety. Furthermore, the State of Arkansas has no excuse, other than retaliatory motive, for not taking any action to enforce the law against the Circuit Clerk. Even in the astronomical chance that the Defendants could offer a pretextual excuse for any one of these adverse actions, it would be impossible for them to conjure up even the most hypothetical excuse that would simultaneously justify all three. Retaliation is the only motive left, simply by process of elimination.

### Sub-Section 4: Damages

28.     First, the fact that the appeal (and, by proxy, the entire case) will be shelved forever has effectively cost me the $11,000,000 judgment mentioned in ¶ 13 of this Complaint.

29.     Second, the Defense is also costing me postjudgment interest on that judgment. Federal courts have the lowest post-judgment interest of any judiciary in the nation, and it is usually less than a percent per annum. The State of Arkansas, however, has a post-judgment interest rate of 10% per annum (see A.C.A. § 16-65-114), and a pre-judgment interest rate of 6% per annum (see

Riceland Foods, Inc. v. Pearson, 357 SW 3d 434, 443 (2009)). With an $11,000,000 principal and a 10% annual interest rate, that comes out to an average of $3,013.70 per day.

### SECTION IV: THE LAW

30. "In order to establish a prima facie case of retaliation, a plaintiff must show (1) that he engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity." See Amir v. St. Louis University, 184 F. 3d 1017, 1025 (8th Cir. 1999).

31. The factual allegations of ¶¶ 9-13 of this Complaint are sufficient to establish the first essential element.

32. The second essential element is established by the factual allegations of ¶¶ 14-20 of this Complaint.

33. The third and final essential element is established by the factual allegations of ¶¶ 21-25 of this Complaint. While the Defendants may yet argue that the disobedience of the Court Order, as well as the rest of the government's refusal to take any enforcement action, were not in any way, shape, or form, motivated by my litigation history, that is for a jury of our peers to decide. I have given enough factual allegations that a reasonable jury could conclude that retaliation was at least a partial motivator behind these actions. See Amir, supra at 1026, holding that, even when the Defendant's "proffered evidence is compelling," it is still improper to dismiss a claim without trial on the merits unless the evidence presents "an inescapable conclusion that [the Defendants] did not retaliate against [the plaintiff]." The 8th Circuit then goes on to elaborate, later in that same paragraph (let alone that same page), stating that, when the alleged retaliator expresses anger and disdain towards the plaintiff because of his statutorily protected activities (such as with ¶ 22 in this case), and an adverse action with no apparent logic behind it is commit-

ted shortly thereafter (such as flunking a student for no apparent reason), then that, alone, is sufficient factual basis upon which a jury can find a casual connection. It is an "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968 (2007). Even if a jury may find this evidence unpersuasive, I have nevertheless met this lenient requirement with flying colors.

34.     As stated in ¶ 7 of this Complaint, there is no qualified immunity for the Defendants in this case. This means that the precedent of Maness,supra (stating that qualified immunity protects court clerks if state level remedies such as state appeal can also grant the relief the plaintiff seeks) is entirely inapplicable in this case in the first instance. However, just to make that perfectly clear, hear is an from a website owned and operated by the U.S. Department of Justice that makes it perfectly clear that there is no requirement to exhaust administrative remedies before filing suit:

> "Again, consistent with section 504, it is not the Committee's intent that persons with disabilities need to exhaust Federal administrative remedies before exercising their private right of action.
> ...
> The Act requires the Department of Justice to establish administrative procedures for resolution of complaints, but does not require complainants to exhaust these administrative remedies. The Committee Reports make clear that Congress intended to provide a private right of action with the full panoply of remedies for individual victims of discrimination. Because the Act does not require exhaustion of administrative remedies, the complainant may elect to proceed with a private suit at any time."
>
> htttps://www.ada.gov/reg2.html

35.     As for the State of Arkansas' failure to take any action whatsoever, that is just as much a constitutional violation as the Clerk's decision to tamper with the record in the first place. In DeShaney v. Winnebago County Dept. of Social Servs., 489 US 189 (1999), the Supreme Court

held that there is no constitutional right to law enforcement, but in that same precedent, they made two very important exceptions: First, when the government itself is violating a citizen's rights (see supra at 196: "the liberty protected by the Due Process Clause affords protection against unwarranted *government* interference," emphasis in original), and second, when the government has caused a citizen to be completely unable to protect or care for himself, such as with incarceration and/or institutionalization (see supra at 200: "When a person is institutionalized — and wholly dependent on the State[,] . . . a duty to provide certain services and care does exist").

36.   The second exception is not at issue in this case, but the first one is. It was the Boone County Circuit Clerk – a state actor – who is depriving me of my right to access the appellate court system through their refusal to comply with a direct order from that same court, without any underlying justification. The State of Arkansas therefore takes on a duty to enforce the law, a duty which they have refused to discharge.

### SECTION V: RELIEF REQUESTED

37.   First, I request an injunction for the State of Arkansas to never again retaliate against me. This means that they should be ordered to never again use my litigation history as a factor in any of their actions or omissions. This requested injunction is identical to the one requested in ¶ 59 of the "Complaint and Jury Demand" in Case No.4:16CV00545-JM, which is also currently pending in this Court. Granting the injunction in either of these two cases would satisfy me.

38.   I also request damages. These can be recovered if the retaliation was intentional, which, in this case, it almost certainly was. See Meagley v. City of Little Rock, 639 F. 3d 384 (8th Cir. 2011).

39.   As for damages, I request the $11,000,000 in damages that was originally at stake, that

the Circuit Clerk is preventing me from recovering.

40. I also request damages for the postjudgment interest that the Circuit Clerk is preventing me from acquiring. This means $3,013.70 per day, starting at October 7, 2016, when they first defaulted on their obligation to supplement the record.

41. Both Defendants should be jointly liable for these damages, since the State of Arkansas' refusal to enforce the law is just as much to blame as is the Circuit Clerk's decision to defy the order in the first place.

## SECTION VI: JURY DEMAND

42. If a jury trial is needed to determine any appropriate facts, I request that the case be tried by a jury of my peers.

## SECTION VII: CONCLUSION

43. The State of Arkansas has made it abundantly clear that they will continue to harass, bully, badger, and persecute me to no end. Unless a federal government agency such as this Court steps in and *makes* them stop, then they will never stop, ever.

44. Wherefore, premises considered, I request that all the aforementioned relief be granted to me, costs incurred be awarded, and any other relief to which I may be entitled.

So requested on this, the 30th day of November, 2016.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com