UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                                      PLAINTIFF

VS.                          CASE NO. 3:17-cv-03016

STATE OF ARKANSAS AND
BOONE COUNTY CIRCUIT CLERK                          DEFENDANT

### SUPPLEMENT TO [21] MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Supplement to the Motion for Summary Judgment (Doc. 21) currently pending in this action.

1. It has recently come to my attention that the Circuit Clerk has finally decided to do something by filing a letter with the AR Court of Appeals. A copy of this letter is hereby attached as **Exhibit 1**. This letter was filed on March 24, 2017, four days *after* the State of Arkansas was (already long overdue) served with process in this action (see Doc. 40).

2. This new development clearly alters the outlook of this case. The question is ... how does it alter the case, and to what extent? The Defendants – both the Circuit Clerk and the State of Arkansas – are almost certainly planning on arguing that this development completely nullifies the entire case and renders my claims entirely moot. But a quick review of how common law works shows that this is not the case.

#### How the damages & injunctive relief are affected.

3. First of all, it is important to note that this does not even arguably nullify the prospective injunctive relief. In the Complaint and Jury Demand, I requested an injunction against both Defendants "to never again retaliate against me ... to never again use my litigation history as a factor in any of their actions or omissions." See ¶ 37 of the "Complaint and Jury Demand." This request for injunctive relief still applies: the Defendant's chronically deficient decision to comply

with their own laws *five and a half months* late does not even arguably change that.

4. Then there is the question of damages. Unlike the injunctive relief, this is indeed changed by this new development. However, much to the Defendants' dismay, their decision to finally act according to their legal obligations does not nullify the damages entirely. This is something that can best be explained, not by statutory citation, but by example.

5. Imagine if a plaintiff sues his former employer for the tort of wrongful termination in violation of Title I of the Americans with Disabilities Act. After being served with process, the defendant in that case offers to reinstate the plaintiff, 5½ months after firing that Plaintiff (much like in this case). The defendant then proceeds to argue that his offer of reinstatement – whether or not accepted by the plaintiff – completely nullifies any injury the plaintiff suffered.

6. Except it doesn't.

7. There are *two* reliefs that the plaintiff is entitled to upon showing discrimination and/or retaliation in an employment practice: Prospective injunctive relief (aka "reinstatement") and *retrospective* injunctive relief, often known in laymen's terms as "back pay." The plaintiff is entitled to the 5½ months' worth of wages that he lost out on while waiting for the defendant to reinstate him, *in addition to* being reinstated. If the employer were to offer *both* reinstatement *and* 5½ months worth of back pay to the plaintiff, then yes, that would certainly nullify all injuries the plaintiff suffered. But mere reinstatement, by itself, does not completely nullify the plaintiff's injuries.

8. Here is another example: Suppose a person gets arrested. He spends 168 days in county jail (the same amount of time it took for the Circuit Clerk to finally do her job in this case). After 168 days, it is revealed that the grounds for arrest were made up by the cop in a fit of personal rage, and the prosecutor agrees to dismiss the charges. The citizen then sues the cop for false

arrest and malicious prosecution.

9. While the dismissal of the charges may result in the cop not being liable for any time spent in the state penitentiary, it does not retroactively nullify the injury the citizen suffered over having spent 168 days in pre-trial incarceration. The cop still has to pay the damages for that. The dismissal of the charges merely means that the damages will no longer go up, not that the existing damages are retroactively nullified.

10. If those examples are too complex for you, here is one more example ... one that you do not even have to be an attorney to understand:

11. Suppose a customer rents an item. It could be a rental car, some movies, or whatever. The exact item being rented is not important. What is important is that the customer does not return the item to the merchant at the specified time. The merchant calls the customer several times, sends multiple letters to the customer, but nothing works. The customer piles up a ton of late fees while the merchant repeatedly demands the item back, but the customer never returns the item.

12. So the merchant decides to sue the customer for both the cost of buying another of the items being rented, and all the late fees in addition to that. After being served with process in that case, then, and only then, does the customer-turned-defendant offer to return the rented item to its rightful owner.

13. Good for you! You have effectively nullified the need for the merchant buy a replacement item. But you're not off the hook yet. Even a person who dropped out of high school – let alone someone who graduated from law school – can tell you that you still have to pay the late fees. Returning the item means the late fees will stop piling up from that day forth, but you are still liable for the late fees you have already accumulated. You have only *reduced* your liability, not eliminated it. Furthermore, that is not even counting whatever punitive damages you might

deserve for your intentional tort, which – much like the prospective injunctive relief requested in this case – remain entirely unaffected.

14. As you can see from these two examples, the Defendants – both the Circuit Clerk and the State of Arkansas – deserve to still be held liable to me for the 168 days of delay that their retaliation caused me before they finally decided to do what they were supposed to do in the first place.

15. Remember that I was not merely suing for the base cost of the state-level court case. I was also suing for the post-judgment interest. During the complaint, I requested damages of $3,013.70 per day in post-judgment interest that the Defendants had cost me. See ¶ 29 of the "Complaint and Jury Demand." However, during the Motion for Summary Judgment (Doc. 21, 22, and 23), I changed my request to $4,430.96 per day, under my right under Fed.R.Civ.P. 54 to recover whatever relief I am entitled to regardless of whether it was listed in the Complaint or not.

16. The Clerk's decision to finally, five and a half months later, do what she was required to do means that the time spent piling up this interest is now capped at 168 days. However, at $4,430.96 per day, that still means that the defendants should be held liable for a total of $744,399.60 in damages. This is certainly less than sixteen million, but it is far, far beyond the sort of *de minimus* violation that would render this case effectively without controversy as defined under the "Case or Controversy" clause.

17. But aren't we forgetting something? Damages only matter if the Defendants acted with a retaliatory intent in the first place, right?

### How the new development affects the essential elements of retaliation

18. Chances are that the Defendants will attempt to argue that their (patently untimely)

compliance with the law negates any presumption of retaliatory motives.

19. It does not.

20. If anything, it only serves to *bolster* the presumption of retaliatory intent.

21. Remember that I argued, in the Complaint and Jury Demand, that a causal connection between the adverse actions and my statutorily protected activities should be presumed, not because the Defendants have admitted to such a vendetta in the current case, but because the Defendants have a 6-year-long history of constantly badgering and harassing me in multiple, unrelated cases, and never making any effort to hide[1] the fact that this harassment and persecution is motivated almost exclusively by my litigation history. See ¶¶ 21-27 of the "Complaint and Jury Demand."

22. This history of harassment and persecution based exclusively on retaliatory intent has already been proven via **Exhibits G-Q** of the Motion for Summary Judgment. This history of retaliation does not magically go away just because the government has finally decided to do its job 5½ months late. Since the adverse actions are not entirely nullified (see ¶ 3-17 of this Supplement for details), that means that the causal connection still applies to the adverse actions which remain.

23. So, at best, the Defendants' "better late than never" attitude towards doing their job provides no evidence in their favor. But in fact, it actually helps to prove that their initial delay in doing their jobs were motivated by retaliation.

24. Why? Because if they were not, then why bother doing the job even now? It is clear, at this point, that the only reason they are doing their job after all this time is *because* they are being sued. They are doing it *exclusively* to avoid liability, *not* because it is simply their duty to do so. The latter motive only makes sense if they complied with the order before the original Oct.

---

1 Presumably because they expected to be protected by judicial and/or prosecutorial immunity.

7 deadline.

25. In other words, they knew that they faced liability if they didn't do this.

26. That means that they knew – even if they will never admit it out loud – they acted with retaliation originally, and that I would be able to prove it if I had my day in court.

27. The *only* potential explanation that could possibly exonerate the Defendants at this point is if they were planning to do this all along, but they merely got sidetracked and delayed due to situations beyond their control, and only just now got around to supplementing the record as ordered, without the delay and lawsuit being in any way connected to each other.

28. First of all, the odds of that being the case are astronomical. To survive summary judgment, "the issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... It follows from these settled principles that if the factual context renders respondents' claim implausible respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574, 586-87 (1986). Thus, even if the Defendants wish to argue that this is what's happening, they would hold the burden of proof on it.

29. Second, we can safely rule out that possibility, even as-is. During Rondha Watkins' Motion to Dismiss for Failure to State a Claim, and the Brief in Support Thereof (Doc. 13 & 14, respectively), the Defendant made it explicitly clear that she had no intention of filing anything with the AR Court of Appeals. She did not feel she should have to, since she believed that she already had done everything she was supposed to do.

30. Something must have happened *after* she filed that Motion to Dismiss in order to change her mind. Maybe it was the arguments in the Motion for Summary Judgment (Doc. 21, 22, & 23)

that she couldn't refute. Maybe it was the State of Arkansas being served with process and realizing that they could not possibly justify their failure to act, and so they proceeded to harp at Watkins to file something. Whatever it was, it is clear that she only decided in the past couple of weeks, tops, that she actually needed to do something in the state case to avoid getting in trouble.

31. This effectively rules out the one and only possible explanation that could eliminate retaliation as a motive. This means that, by process of elimination, she and the State of Arkansas both necessarily acted out of retaliation when they first failed to act when they first had the chance.

32. They should still be liable for the $744,399.60 in damages that they have not corrected.

### Additional liability

33. It has now been revealed that the state case is being delayed, in part because of the Clerk's refusal to comply with the Court of Appeals' mandate, but also because some other officers of the Court also failed to do their jobs. As such, a motion to amend the complaint is being filed simultaneously with this Supplement. This motion seeks to hold the State of Arkansas liable under Sec. 503 of the Americans with Disabilities for a different reason than originally stated, and also seeks to add two new defendants to be held liable in a § 1983 claim. I hope for an expeditious resolution of that Motion to Amend Complaint.

### CONCLUSION

34. As you can see from this Supplement, the Defendants' recent actions, while certainly better than nothing, nevertheless fail to exonerate them altogether, as they were hoping. The Defendants should still be liable for $744,399.60 for the delay they have already caused, and if anything, their recent actions only further cement that they originally acted out of retaliatory spite. Besides, the Court still needs to issue a prospective injunction for the State of Arkansas to

stop retaliating against me.

Wherefore, premises considered, I respectfully pray that the Motion to Dismiss (Doc. 21) be granted, the injunction to permanently and forever cease and desist their retaliation be entered against the Defendants, that damages fo $744,399.60 be awarded in my favor along side costs incurred, and any other relief to which I may be entitled.

So requested on this, the 4th day of April, 2017.

*David Stebbins*
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com



David Stebbins
123 W. Ridge St.,
ATP D
Harrison, AR 72601

U.S. District Court
35 East Mountain Street, Room 510
Fayetteville, Arkansas 72701-5354

72701$5353